[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
BACKGROUND
This is an action brought by the Plaintiff wife against the Defendant husband for dissolution of their marriage on the grounds of an irretrievable breakdown. The parties were married on May 17, 1987 at New York, New York. The parties have two minor children issue of the marriage: Amanda Kaufmann, age ten, born CT Page 16428 February 11, 1989 and Stephanie Kaufmann, age six, born April 25, 1993.
The parties appeared at trial and each testified. The court observed their demeanor and evaluated their credibility. In addition, the court reviewed and considered the exhibits, sworn financial affidavits, claims for relief, proposed orders and trial memoranda. Based upon the evidence, the court makes the following findings.
This action was commenced on April 15, 1998. The court has jurisdiction, and all statutory stays have expired. The marriage has irretrievably broken down and judgment may enter dissolving the marriage on this ground. The Plaintiff is 44 years old and in good health. She has a master's degree in accounting and is a CPA. She worked as a certified public accountant until she became pregnant with her first child. Thereafter, the Plaintiff occupied her time by, among other things, raising the couple's children, but not by acting in her professional capacity as a CPA.
The Defendant husband is 49 years old and in good health. At the time of the marriage he was a partner in the New York law firm of Eaton and Van Winkle and is currently a partner in the New York law firm of Winston and Strawn.
With their backgrounds and education, both parties have excellent opportunities for future acquisition of capital assets and earnings. The plaintiff will need a short period to update her knowledge and skills.
In July, 1998, after a period of marital discord and at the Plaintiff's request, the Defendant moved out of the marital residence to an apartment in New York City. The Plaintiff remains in the family residence in Westport which, at present, is worth approximately $800,000.
During the marriage, the parties spent all they earned, and more. They made large contributions to retirement accounts which, at the time and to the present, left them short of money for living expenses, taxes and other bills. They borrowed, charged, accumulated large credit card balances, made withdrawals from capital to make payments, and often failed to make payments on time. Furthermore, as a result of the Plaintiffs refusal to sign a joint tax return for 1998, the Defendant was required to pay additional income taxes of $18,000. CT Page 16429
Both parties had remarkably little concern for the preservation of marital assets. One egregious example of this indifference, and one which contributed in large part to the breakdown of this marriage, was the Defendant's spending of some $33,000 on activities and adventures extremely inappropriate and unbecoming of a married person.
At the time of the marriage, the Plaintiff had approximately $55,000 worth of assets including $45,000 of equity in a condominium and $6000 in an IRA and the Defendant approximately $118,000 consisting, in part, of $55,000 equity in a New York cooperative and $8000 in an IRA account.
The Plaintiff sold her apartment during the first year of the marriage and, in 1989 used the $40,000 net proceeds toward the purchase of the parties' first home on Patrick Lane, Westport. Ninety percent of the purchase price of $400,000 was paid by way of a mortgage loan.
In 1991, the parties purchased their present home at 20 River Knoll, Westport for $550,000, with a down payment of $110,000. The deposit, in part, was comprised of funds from the sale of the Plaintiff's cooperative apartment.
During the marriage, the Defendant withdrew substantial amounts from his capital accounts at Eaton and Van Winkle to pay family expenses and to make payments on their debt obligations. In October of 1998, the Defendant withdrew $105,000 from his pension plan to pay income taxes for 1997. He realized $95,000 from this withdrawal as $10,000 was withheld for taxes. This amount was insufficient for the required payment and the Defendant made up and paid the $15,000 difference.
In 1997, the Plaintiff earned $414,390 and withdrew $40,000 from his Eaton and Van Winkle capital account. In 1998 the Plaintiff earned $300,000, withdrew $60,000 from his Eaton and Van Winkle account, withdrew $105,000 from a retirement account, and borrowed $15,000 from the cash value of a life insurance policy (the balance needed for payment of the 1997 income taxes). On October 18, 1999, without the funds to pay, the Defendant filed his 1998 U.S., New York, Illinois and Connecticut tax returns without payment. He has approximately $68,000 in outstanding taxes due for 1998. CT Page 16430
The Plaintiff asserts that the break up of the marriage was the result of the Defendant's inappropriate behavior in 1993, 1994 and 1997. There is no doubt that the Plaintiff suffered when she learned of these activities. However, it is also clear that the parties began to drift apart and disassociate before 1993. The move to Westport in 1989 after the birth of their first child, the Plaintiff's long hours of work with the additional commuting time, and the difficulties adjusting to a new community and a new house which neither enjoyed, played major parts in the disintegration of their relationship. By early 1990, the parties had become disengaged. At first, the Defendant made attempts to arrange more time for activities together, to energize their social life as a couple and to pursue more of the Plaintiff's attention. The Plaintiff, however, continued to direct most of her attention to her children and to her newly acquired friends in Westport. The Plaintiff failed to respond to the Defendant's complaints and rejected, to any meaningful extent, the Defendant's requests that they seek counseling. The parties' differing interests and their failure to dedicate themselves to this relationship caused them to drift apart and made fruitless their small efforts at reconciliation. In the early part of 1998, the parties agreed that the time had come for a dissolution action and suit was started in April 1998.
The Defendant continued to live in the family house until mid July 1998 when, at the request of the Plaintiff, the Defendant moved out. The Defendant moved to a one bedroom, two room, apartment in New York City. The Plaintiff complains that the rent for the apartment is high, but the choice was reasonable considering that the Defendant works in New York City and that the Defendant wanted sufficient space for visits from his daughters. The Plaintiff continues to reside in the Westport home and has regular assistance of a housekeeper and an au pair.
The Defendant paid for all household bills relating to 20 River Knoll premises during 1997 and through August 1998. These payments were paid from his pretax earnings. Since September 1998, pursuant to a temporary alimony agreement, the Defendant has paid the Plaintiff $11,000 per month unallocated alimony and child support.
Shortly after the agreement for temporary alimony and support, the Plaintiff refused to file joint income tax returns for 1997 and 1998 and filed her own separate returns. The Plaintiff, a CPA, fully realized the financial implications of CT Page 16431 her decision. Her refusal to file these joint tax returns cost the family approximately $20,000 in 1997 and $7000 in 1998. In the fall of 1998, to avoid the possible imposition of a tax lien on the family home, the Defendant made an early withdrawal of $105,000 from his IRA which caused the imposition of a 10% penalty. The Plaintiff filed a motion for contempt based upon this withdrawal. Judge Kavanewsky found that the Defendant, by use of these funds, had received a de facto distribution from the marital estate in the sum of $105,000. His finding was made "without prejudice" and permitted the Defendant to question this finding at trial. The court finds that these funds were used appropriately to pay the family's obligation to the IRS and, as such, reduced the total family's debt in the amount so used. This payment also saved interest and penalties which would otherwise have been incurred.
The parties have reached an agreement on issues surrounding the care and custody of the children. In accordance with the parties' agreement, the court enters the following order: the parties are awarded joint legal custody of the two minor children, Amanda Kaufmann, born February 11, 1989, and Stephanie Kaufmann, born April 25, 1993; the Plaintiff shall be the primary residential parent; and the Defendant shall have reasonable and flexible rights of visitation consistent with the activities of the children including regularly scheduled weekend visitation on a rotating four week cycle as follows:
 Week one: Friday evening at 6:30 p. m. to Sunday evening at 4:00 p. m. Week two: no weekend visitation. Week three Saturday 12:00 noon to Sunday 4:00 p. m. Week four: Saturday 12:00 noon to Sunday 4:00 p. m. Wednesday evenings. In addition, Defendant shall have the right to arrange weekday evening visitation as schedules permit, with 48 hours advance notice. Holiday and visitation time shall be divided equally between the parents.
The court has carefully considered the criteria set forth in General Statutes §§ 46b-62, 46b-81, 46b-82, 46b-84, an the applicable case law in reaching the decisions reflected in the orders that follow:
 1. The marriage of the parties, having broken down CT Page 16432 irretrievably, is hereby dissolved.
 2. Custody of the minor children shall be as hereinbefore set forth.
 3. The Defendant shall continue existing medical coverage for the benefit of the children for so long as he is responsible for their support. Medical expenses for the children that are unreimbursed by insurance shall be shared equally by the parties. The provisions of General Statutes § 46b-84(e) shall apply. The Plaintiff shall be entitled to the continuation of her current coverage under the Defendant's group medical plan, at her expense, for the maximum period allowed by law and the Defendant shall cooperate with the wife's continuation of said coverage under COBRA.
 4. The Plaintiff, at the election of the Defendant, shall cooperate in filing amended joint state and federal tax returns for 1997 and 1998. In the event that there shall be a refund as a result of said filing, the parties shall each be entitled to 50 percent of the refund. The parties shall each be responsible for one-half of their total combined federal, state and local personal income taxes for 1998. Each party shall receive a credit for all income tax payments made toward said tax liability. Any balance due shall be paid to the IRS, along with any proportional interest and penalty on or before February 1, 2000. In the event the Plaintiff fails to so cooperate and file said joint return, the division of the Defendant's bonus provided in Paragraph 10, infra, shall be changed and reallocated as follows: the Plaintiff shall receive 1/3 and the Defendant shall receive 2/3.
 The court shall retain jurisdiction over the parties' responsibility for the 1998 tax liability and shall have authority to issue such additional orders as may be required to effectuate the equal division of this liability. The Plaintiff shall have the right to claim the dependency exemptions for the children commencing with the tax year ending December 31, 1999 and continuing for so long as the Defendant is paying CT Page 16433 alimony or child support.
 The parties shall indemnify each other in connection with the income and deductions claimed on such amended returns.
 5. The Defendant shall pay to the Plaintiff unallocated alimony and child support from January 1, 2000 to December 31, 2004 in the amount of $11,500 per month and thereafter from January 1, 2005 through December 31, 2006 the amount of $9000 per month. Said unallocated alimony and support shall be payable monthly, in advance, on the first day of each month. The first payment on January 1, 2000 and the last on December 1, 2006. This amount is based on the Defendant earning $325,000 gross annual income and the Plaintiff with no earned income. Said unallocated alimony and support shall terminate upon the death of the Defendant, the death of the Plaintiff, the Plaintiff's remarriage or December 31, 2006, whichever shall occur first. Upon the termination of alimony, child support shall be calculated in accordance with the then applicable laws governing child support. In the event that the minor children maintain their primary residence with the wife at the time alimony is terminated, any child support order shall be retroactive to the first day of the month following the month during which the alimony terminated.
 The court finds that the unallocated alimony and support award exceeds the presumptive minimum level of the child support guidelines. Such deviation is appropriate in light of the earnings of the Defendant and as part of the coordination of total family support. It would be inappropriate and inequitable to enter orders in accordance with the guideline suggested amount. A contingent wage garnishment shall issue. Child care shall be provided by the Plaintiff. Orders concerning child care and unreimbursed medical reimbursements also deviate from the presumptive guideline figures for the same reasons.
 6. Marital residence — both parties shall execute and deliver a quit claim deed of their right, title and interest in and to the premises known as 20 River CT Page 16434 Knoll, Westport, Connecticut, to the parties as tenants in common. They shall equally share the cost of major repairs (those costing more than $500 per item). The Plaintiff shall be solely obligated to pay all real estate taxes, monthly mortgage payments, utilities and all expenses relating to and associated with said property and shall indemnify and hold the Defendant harmless from any liability associated therewith.
 7. The parties shall place said property on the market for sale upon the happening of the first of the following events: the death or remarriage of the Plaintiff, failure of the Plaintiff to use the home as a principal residence for herself and at least one of the children, or Stephanie's 19th birthday, April 25, 2012. Each party shall receive 50 percent of the net equity in the house after payment of sales commissions, and expenses of sale. The court retains jurisdiction over any and all issues which may arise concerning the sale of the marital residence, including but not limited to the establishment of a listing price, terms of the listing and each party's compliance with the listing agreement and acceptance of any offers of sale. The Plaintiff shall have the option of buying the Defendant out of his interest at any time. If the Plaintiff undertakes to buy the Defendant out, the parties shall agree on an appraiser who shall determine the gross value of the property. If the parties are unable to agree upon an appraiser, the court will appoint an appraiser.
 8. The husband's pension plan shall be divided 53.9 percent to the Plaintiff and 46.1 percent to the Defendant. The Plaintiff's share of 53.9 percent shall be approximately $292,820. The Defendant's 46.1 percent share shall be approximately $250,267. The Plaintiff's interest in the Defendant's pension benefit shall be secured by a QUADRO which shall be prepared at the Defendant's expense. The division shall be as of the date of this judgment.
 9. The Plaintiff shall retain her $99,000 IRA account in her individual name. The Defendant shall retain his IRA account, $26,157, and his 401K account, $14,000. CT Page 16435
 10. The Defendant's bonus for 1999 in the amount of $45,749 shall be divided as follows: $30,000 shall be paid to the Plaintiff and $15,749 shall be paid to the Defendant. In the event that the Plaintiff fails to cooperate in filing joint tax returns for 1997 and 1998, this allocation shall be revised as provided in Paragraph 4, supra.
 11. The Defendant shall retain the cash value on his Northwestern Mutual Life Insurance Policy.
 12. The Defendant shall retain his car and the security deposit on his apartment. The Plaintiff shall retain her leased automobile, her jewelry and her furs. The Plaintiff shall keep the contents of the martial residence except those items set forth on the attached Schedule A.
 13. The Defendant shall provide life insurance for the benefit of the children in the amount of $150,000 per child for so long as he is obligated to provide for their support. He shall also provide additional insurance for the benefit of the wife in the amount of $250,000 for so long as he is obligated to pay her alimony. The obligation to provide life insurance shall be modifiable pursuant to General Statutes § 46b-86.
 14. Other than as specifically provided above, the Defendant and the Plaintiff shall be each solely obligated to pay their own liabilities as shown on their financial affidavits. Each party shall be solely responsible for any balance of the lease on their automobile.
 15. The Defendant shall pay counsel fees to the Plaintiff in the sum of $10,000, the said amount to be paid within 12 months of the date of this judgment.
 16. Counsel for the Plaintiff shall draft and sign a judgment file within 30 days and send the same to counsel for the Defendant for signing and returning to court.
CT Page 16436
 The court retains jurisdiction for the execution of any QUADRO or any supporting documents.
HILLER, J.